IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD ASKEW, ) | |
| ) | |
| Plaintiff, ) | No. 04 C 3863 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| CITY OF CHICAGO, FRANK E. QUINN III ) | |
| and WALTER W. PUCHALSKI, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

As a result of his arrest for aggravated assault, Leonard Askew sues the City of Chicago, and two Chicago police officers, Frank E. Quinn III and Walter E. Puchalski, for violating his civil rights under 42 U.S.C. § 1983 (Counts I and II), false arrest (Count III), assault and battery (Count IV), and malicious prosecution (Count V). He seeks to hold the City liable for Quinn and Puchalski's conduct under *respondeat superior* and indemnification principles (Counts VI and VII). Defendants move for summary judgment on all counts pursuant to Fed.R.Civ.P. 56.[1]

**BACKGROUND**

The following facts are undisputed unless otherwise noted. Askew is an African-American male who resides in Matteson, Illinois. Quinn and Puchalski are Caucasian Chicago police officers.

---

[1] Quinn and Puchalski filed a joint motion for summary judgment and statement of undisputed facts ("Officers' facts"). The City filed a separate motion and statement of undisputed facts ("City facts"). Askew filed a joint response memorandum, but responded separately to the Officers' facts ("Pl. Resp. Officers' facts"), and the City facts ("Pl. Resp. City facts"). Pursuant to Local Rule 56.1, Askew filed additional facts ("Pl. facts"). Defendants' jointly responded to Askew's additional facts ("Def. Resp. Pl. facts").

1

I.  **Quinn and Puchalski Respond to Police Call**

On February 25, 2004, Quinn and Puchalski worked as partners in a marked squad car. Pl. Resp. Officers' facts ¶ 4. Shortly before 4:00 p.m. on February 25, 2004, they responded to a police radio call that there was a person with a gun at 103rd Street and Pulaski in Chicago. *Id.* at ¶ 5. After receiving the initial call, Quinn and Puchalski received additional information from the dispatch center via their on-board computer, also known as a personal data terminal ("PDT"). *Id.* at ¶ 7. The additional information indicated the person with a gun was a black male in a maroon car.[2] *Id.* at ¶ 8.

When Quinn and Puchalski arrived at 103rd and Pulaski, they observed an African-American man in or near a maroon car parked in the middle of Pulaski. *Id.* at ¶ 9. Askew was driving a maroon car on February 25, 2004. *Id.* at ¶ 10. Quinn and Puchalski pulled their squad car in front of Askew's car and approached him. *Id.* at ¶ 11. Quinn asked Askew whether he had a gun, and he said no. Def. Resp. Pl. facts ¶ 48. Quinn and Puchalski then conducted a pat-down search of Askew. Pl. Resp. Officers' facts ¶ 12. The parties dispute whether Askew was handcuffed during the pat-down search. Def. Resp. Pl. facts ¶ 47. Quinn found a knife on Askew and took custody of it. Pl. Resp. Officers' facts ¶ 13. Askew was placed in the back seat of the officers' police car. *Id.* at ¶ 14.

Quinn then approached a man and woman in a nearby parking lot across the street on Pulaski. *Id.* at ¶ 15. Quinn asked the man, Craig Padgett, and woman, Carrie Lis, if they had called 911; they responded that they had. *Id.* at ¶ 16. Quinn observed that Lis was visibly upset. *Id.* at ¶ 17. He

---

[2]Askew denies this fact, but his record citations do not support his denial. Pl. Resp. Officers' facts ¶ 8. It is unclear whether Quinn and Puchalski received this information before arriving at the scene. However, there is no dispute they received the additional information before they approached Askew. Officers' facts ¶¶ 7-8.

asked Lis and Padgett about the gun; Lis told him there was no gun. *Id.* at ¶ 18. Lis and Padgett told Quinn they were involved in an altercation with Askew arising out of a traffic incident and that Askew pulled a knife on them. Def. Resp. Pl. facts ¶¶ 57, 58, 59. The parties dispute exactly what Lis and Padget told Quinn about the incident, but there is no dispute the gist of what they said was that Askew brandished a knife at them and used threatening language. *Id.* Quinn testified Lis told him she was scared of Askew because he threatened to harm her with a knife. Officers' facts ¶ 16. Lis testified either she or Padgett told Quinn that Askew used vulgar profanity and pulled out a knife. *Id.* Lis testified Askew said "bitch" and "fuck" and that she found his words threatening. Pl. Resp. Officers' facts ¶ 16. She testified she told Quinn the truth about what happened. Officers' facts ¶ 16.

Padgett testified Askew said he "was going to get us," while thrusting forward with the knife. *Id.;* Def. Resp. facts ¶¶ 31, 33. He said Askew was about 10 feet away from him at the time and he felt safe because of the distance. *Id.* Padgett did not indicate specifically what he told Quinn about the incident. *Id.* However, Lis testified Padget explained what happened to Quinn. Def. Resp. facts ¶ 73. Quinn was the only police officer to interview Lis and Padget. Def. Resp. Pl. facts ¶ 52.

## II.   The Criminal Complaints

After hearing their descriptions of the incident and retrieving the knife from Askew, Quinn asked Lis and Padget if they wanted Askew prosecuted; they both responded affirmatively. Def. Resp. Pl. facts ¶ 78. Quinn partially filled out criminal complaints charging Askew with aggravated assault. Lis and Padget signed the criminal complaints before the narrative portions were completed. *Id.* at ¶ 98. Quinn later filled in the narrative portions at the police station; Lis and Padget were not present. *Id.* at ¶ 99. The narrative portions of both complaints stated that Askew:

3

displayed a knife and without lawful authorization pointed the knife at complainant and thereafter threatened to kill complainant, thereby placing her [him] in reasonable apprehension of a battery.

*Id.*

The parties dispute whether Quinn acted in accordance with Chicago police department custom or practice when he filled out the narrative portions of the complaints after the complainants signed them. Quinn testified he complied with department practice and that he has followed this practice hundreds of times. *Id.* at ¶ 103. He also testified he had been told, possibly in training, that he could fill in the details of a complaint after it was signed by the complainant. *Id.* at ¶ 104. Judith Martin, the Chicago police department's 30(b)(6) witness, testified that officers are trained in the police academy how to fill out complaints. Def. Resp. Pl. facts ¶ 106. She testified police department general orders require criminal complaints to be completed before signed by complainants. *Id.* at ¶¶ 106, 108.

### III. Askew's Arrest and Detention

Askew was arrested for aggravated assault and transported to the 22nd District for initial processing. Pl. Resp. Officers facts ¶ 22. Other than asking Askew whether he had a gun and advising him he was under arrest for aggravated assault, Quinn had no other conversations with Askew about the incident. Def. Resp. to Pl. facts ¶ 48. The parties dispute when Askew was initially handcuffed and placed in the back of the squad car. *Id.* at ¶¶ 61-63. Askew testified he was handcuffed and placed in the back of the squad car after Quinn talked to Lis and Padgett. Pl. facts ¶ 61. The officers testified Askew was handcuffed immediately after they found his knife during the pat-down search. Def. Resp. facts ¶ 61. Askew did not resist arrest and cooperated fully with the police when he was taken into custody. *Id.* at ¶ 64.

Askew remained in custody until the morning of February 26, 2004, when he posted bond. Pl. Resp. Officers' facts ¶ 24. The criminal case against Askew was dismissed because neither Lis nor Padgett appeared in court as a complaining witness. Def. Resp. facts ¶ 120.

### IV. Askew's Alleged Injury

The parties dispute whether Askew complained that his handcuffs were fastened too tightly. *Id.* at ¶¶ 111-115. Askew testified he immediately started feeling pain from the handcuffs as soon as he was handcuffed because they were too tight. He told either Quinn or Puchalski that the handcuffs were too tight, but the officers refused to loosen them. Pl. facts ¶ 111. He claims the pain grew worse as he sat in the back of the squad car and he again complained to the officer in the car. *Id.* at ¶ 112. Askew's handcuffs were removed when he arrived at the police station for processing; he was then handcuffed by one hand to a ring or bar on the wall. *Id.* at ¶ 23.

The parties also dispute whether Askew suffered an injury from the handcuffing. Askew testified he sought medical treatment for numbness and pain in his right hand and wrist following his release from custody. *Id.* at ¶ 116. He asserts he did not have any problems with his right hand before February 25, 2004. *Id.* at ¶ 117. On March 11, 2004, Askew sought medical treatment for pain and numbness in his right hand and wrist. *Id.* at ¶ 116. His physician referred him to a neurologist. *Id.* at ¶ 116. His neurologist diagnosed ulnar neuropathy. *Id.* at ¶ 117. Neither the primary physician nor the neurologist could determine the cause of his injury. *Id.* at ¶¶ 116-117.

### V. Probable Cause Investigation

Askew advances additional facts that he believes should have been investigated by Quinn prior to his arrest. *See, e.g.,* Def. Resp. Pl. facts ¶¶ 38-40, 60. 84, 93-97. However, the additional

facts are not material for purposes of deciding this motion because they do not contradict the basic information Quinn received from Lis and Padgett regarding Askew's assault with a knife.

## VI.     Inconsistent Testimony

Askew cites numerous inconsistencies between Quinn, Lis and Padgett's deposition testimony relating to the events surrounding February 25, 2004. *See, e.g.*, Pl. facts ¶¶ 71, 72, 75, 76, 80-82. For example, he cites inconsistencies relating to the location of his knife after the police seized it. *Id.* at ¶¶ 80-82. He also cites inconsistencies relating to whether Quinn showed Lis and Padgett his knife for identification. Pl. Resp. Officers' facts ¶ 19. The location of the knife is immaterial. Whether Quinn showed Lis and Padget the knife is also immaterial. There is no dispute the police seized a knife from Askew and that Lis and Padget positively identified Askew as the person who wielded a knife. Pl. Resp. Officers' facts ¶¶ 13, 16; Def. Resp. Pl. facts ¶¶ 49, 57-58. In sum, the additional facts proffered by Askew are immaterial to the issues raised in defendants' motions.

## DISCUSSION

## I.     Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying evidence that demonstrates the absence of a genuine issue of material fact. The non-moving party must then come forward with evidence and designate specific facts that establish there is a genuine

6

triable issue. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. Quinn and Puchalski's Motion for Summary Judgment

### A. Count I: § 1983 Liability for False Arrest and False Imprisonment

In Count I, Askew claims Quinn and Puchalski violated his civil rights pursuant to 42 U.S.C. § 1983 by falsely arresting and detaining him without justification and without probable cause. Quinn and Puchalski argue summary judgment must be granted in their favor on Count I because there are no genuine issues of material fact whether they had probable cause to arrest Askew. Askew counters that there are disputed facts relating to whether the police officers had probable cause to arrest him for aggravated assault. He argues the police officers' failure to conduct a thorough investigation prior to arrest, and the manner in which Quinn completed the criminal complaints, create issues of fact as to whether there was probable cause for his arrest. Response at 7-8.

The existence of probable cause for arrest is an absolute bar to a § 1983 claim for unlawful arrest and false imprisonment. *Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). This is true regardless of a police officer's motive for the arrest. *Schertz*, 875 F.2d at 582. However, if the probable cause finding is based on a police officer's intentional misrepresentation of material facts, a plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of the arrest. *Id.* The police have probable cause to arrest a suspect when the facts and circumstances within their knowledge based on reasonably trustworthy information are sufficient to warrant a prudent person to believe that the suspect committed a crime. *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003);

7

*Sheik-Abki v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed. *Beauchamp*, 320 F.3d at 743.

The Seventh Circuit has consistently held that when a police officer has received information from a single eyewitness or putative victim of a crime who it seems reasonable to believe is telling the truth, he has probable cause to make an arrest. *Id.; Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439-440 (7th Cir. 1986). When probable cause has been established from the report of a reasonably credible eyewitness or victim, there is no constitutional duty to investigate further. *Beauchamp*, 320 F.3d at 744; *Grameros*, 797 F.2d at 440. Whether an officer had probable cause to make an arrest may be decided as a matter of law when there is no genuine dispute over the predicate facts that formed the basis of the probable cause finding. *Beauchamp*, 320 F.3d at 746; *Adams v. Connors*, 2002 U.S. Dist. LEXIS 14664, at *18 (N.D. Ill. Aug. 8, 2002).

The court must apply these standards to decide whether there are any genuine issues of material fact as to whether Quinn and Puchalski had probable cause to arrest Askew for aggravated assault. A person commits assault when without lawful authority he engages in conduct that places another in reasonable apprehension of receiving a battery. 720 ILCS 5/12-1. A person commits aggravated assault when he uses a weapon to commit assault. 720 ILCS 5/12-2. A battery is conduct that causes physical harm to another person or physical contact with another person of an insulting or provoking nature. 720 ILCS 5/12-3. There is no dispute Lis and Padget told officer Quinn they were involved in an altercation with Askew wherein he brandished a knife at them, and that Lis was visibly upset about the incident. Lis told Quinn that Askew used vulgar language she found to be

threatening, such as "bitch" and "fuck," while displaying the knife. Officers' facts ¶ 16. Padget told Quinn that Askew verbally threatened to "get" them. Officers' facts ¶ 16. Although Lis and Padget could not recall everything they told Quinn and described some of the details differently, the gist of what they told Quinn was the same–Askew wielded a knife at them and spoke threatening words. The information they conveyed to Quinn provided probable cause to arrest Askew for aggravated assault.

Askew responds by arguing that the officers had an obligation to conduct a more thorough investigation before finding probable cause. Askew's argument must be rejected. The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious. Only then would an officer have a further duty to investigate. *Beauchamp*, 320 F.3d at 743. In crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is untruthful. *Id.* Quinn and Pulchaski did not rely on just one eyewitness. They had statements from *two* witnesses, discovered a knife on Askew, and witnessed Lis visibly upset from the incident. A prudent police officer, faced with this information, could have reasonably believed Askew committed aggravated assault.

Askew's reliance on *Bevier v. Hucal*, 806 F.2d 123 (7th Cir. 1986), to support his argument that the officers had an obligation to conduct a more thorough investigation is misplaced.[3] In *Bevier*, the arrestees were charged with child neglect, a crime requiring defendants to act "knowingly or willfully." Although the police officer saw filthy and listless children sitting outside, he did not

---

[3] Nor does the court find two Sixth Circuit opinions cited by Askew convincing. Response at 8-9. Those cases are not binding on this court.

question the teenager watching them or the parents about the children's condition. *Id.* at 126-7. He simply arrested the father when he appeared at home while the children were being taken away, and arrested the mother when she arrived at the police station. *Id.* at 125. The Seventh Circuit affirmed a finding that the arrests were unreasonable, stating: "reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place." *Id.* at 128.

This case involves a totally different set of circumstances. Based on the information provided to the police, there was no uncertainty whether Askew committed a crime. Indeed, even if Askew had denied threatening Lis and Padget with a knife, Quinn may still have reasonably determined there was probable cause to arrest him based on the statements of two eyewitnesses. Moreover, in *Bevier*, the children were removed from the house and, thus, the officers could have conducted a thorough pre-arrest investigation with no threat of future harm. Quinn, on the other hand, had to make a probable cause determination while still at the scene in light of the continued threat Askew posed as an alleged violent offender.

Askew further argues that a genuine issue of material fact exists as to probable cause because Quinn filled in the narrative portion of the criminal complaints after Lis and Padget signed them. Quinn's narrative portion stated that Askew displayed a knife, and without lawful authorization pointed the knife at Lis and Padget; he then "threatened to kill" them. Def. Resp. Pl. facts ¶ 99. Neither Lis nor Padget told Quinn that Askew "threatened to kill" them. A probable cause finding based on an officer's intentional misrepresentation of material facts may violate the Fourth Amendment. *Schertz*, 875 F.2d at 582. However, whether Askew "threatened to kill" Lis and Padget is not a material fact for purposes of determining whether probable cause existed for his arrest. Aggravated assault does not require a threat to kill; rather, it requires conduct that places the

victim in reasonable apprehension of bodily harm. 720 ILCS 5/12-1-3. Even if Quinn misrepresented that Askew threatened to kill Lis and Padget, the misrepresentation was not necessary to the probable cause finding and does not create a genuine issue of material fact. Moreover, the officers did not need to rely on the sworn written complaints in order to find probable cause. *See Grameros*, 797 F.2d at 434; *Sheik-Abdi*, 37 F.3d at 1249.

In sum, the court concludes there are no genuine issues of material fact as to whether probable cause existed to arrest Askew for aggravated assault. Based on the information they received from Lis and Padget, Quinn and Puchalski had probable cause to arrest Askew for aggravated assault. As a result, Askew's false arrest and false imprisonment claims under 42 U.S.C. § 1983 are barred. *See Fernandez*, 937 F.2d at 370; *Schertz*, 875 F.2d at 582. Summary judgment must therefore be granted in Quinn and Puchalski's favor on Count I.

### B. Count II: § 1983 Liability for Excessive Force

In Count II, Askew alleges Quinn and Puchalski used excessive force because they handcuffed him too tightly. Defendants argue summary judgment must be granted because the officers' use of force was not unreasonable under the circumstances. Viewed in the light most favorable to Askew, the evidence shows the officers handcuffed Askew so tightly as to cause him severe pain. The officers ignored his requests to loosen the handcuffs even though he did not pose an immediate threat to the safety of the officers or others: he was locked in the backseat of a squad car, did not resist arrest or attempt to flee, and fully cooperated with the police. Following his arrest, he sought medical treatment for pain and numbness in his right hand and wrist. The court must decide whether this evidence creates a genuine issue of material fact as to whether the police officers used excessive force when arresting him.

Askew's evidence is analyzed under the Fourth Amendment and its reasonableness standard. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). A police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of arrest, the officer used greater force than was reasonably necessary. *Id.* The inquiry is fact specific and balances the intrusion on the individual against the governmental interests at stake. *Id.* The specific facts the court must consider are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Askew relies primarily on *Payne*, 337 F.3d at 778, and *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), to support his excessive force claim. In *Payne*, the Seventh Circuit reversed summary judgment for defendants on an excessive force claim. Plaintiff presented evidence that the arresting officer held his gun over her head as if to strike her, knocked into her body with his stomach and chest, forced her arms behind her back, twisted her arm, and fastened her handcuffs too tightly. *Id.* Plaintiff sustained serious injuries as a result. *Id.* The officer's force in arresting plaintiff, who was not threatening to harm anyone or resisting or evading arrest and who was charged with a minor offense (obstructing a police officer or disorderly conduct), was not objectively reasonable. *Id.* at 779.

In *Herzog*, plaintiff was arrested for driving under the influence of alcohol. 309 F.3d at 1043. Prior to arresting plaintiff, the police officer ordered her out of her car, walked her to the sidewalk and pushed her down. Plaintiff fell into some bushes and hurt her hands. The police officer ordered her to take a battery of DUI performance tests. She passed all tests. *Id.* Nevertheless, the police officer handcuffed plaintiff and told her she was under arrest for driving under the influence.

Plaintiff protested and the police officer then forced a plastic breath test tube in plaintiff's mouth, cracking a tooth. The test revealed a 0.00 blood-alcohol level. *Id.* Nevertheless, plaintiff was transported to the police station in handcuffs. At the station, another officer laughed at her when she complained the handcuffs were too tight. *Id.* She was later taken to the hospital for urine and blood tests, which were also negative for alcohol. *Id.* Shoving plaintiff to the ground and refusing to loosen her chafing handcuffs were both instances of excessive force. *Id.*

The Seventh Circuit distinguished *Herzog* in another excessive force case involving overly-tight handcuffs. In *Braun v. Baldwin*, 346 F.3d 761, 762-3 (7th Cir. 2003), plaintiff was arrested for disorderly conduct after refusing to leave the lobby of a courthouse where he was protesting. No charges were filed against plaintiff, nor was he jailed. Plaintiff claimed he was subjected to excessive force because the police handcuffed him too tightly. *Id.* at 763. Summary judgment for defendant was affirmed because, unlike *Herzog*, "there [was] no indication [plaintiff's] arrest was effected in an unusual or improper manner, [and thus] the excessive force claim has no possible merit." *Id.; see also Tibbs v. City of Chicago*, U.S. Dist. LEXIS 4510, at *14-15 (N.D. Ill. Feb. 8, 2005) (summary judgment granted on excessive force claim because there was no evidence arrest was effected in unusual or improper manner).

Similarly, Askew offers no evidence his arrest was effected in an unusual or improper manner. The officers had probable cause to arrest him for a violent offense based on information received from two eyewitnesses. Unlike *Payne* and *Herzog*, Askew presents no evidence the officers shoved him, pushed him down, twisted his arm, or used similar force against him during the arrest. Rather, his excessive force claim is based exclusively on tight handcuffs. Consistent with *Braun*, summary judgment must be granted in Quinn and Puchalski's favor on Count II.

### C. Count III: False Arrest and False Imprisonment

Askew alleges the officers arrested and imprisoned him without probable cause. Under Illinois law, lack of probable cause is an essential element for claims of false arrest and false imprisonment. *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980); *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 564 N.E.2d 1222, 1231 (1990). As set forth above, Quinn and Puchalski had probable cause to arrest Askew. Summary judgment must therefore be granted in Quinn and Puchalski's favor on Count III.

### D. Count IV: Assault and Battery

Askew alleges the officers offensively touched him resulting in physical injury, including a reasonable apprehension of great bodily harm. Count IV is not based on the officers' pre-arrest conduct. Rather, it is based on Askew's claim that the officers handcuffed him tightly upon his arrest without probable cause. Response at 18-19. Illinois law defines a civil battery as the unauthorized touching of another person. *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622 (7th Cir. 1989). Assault is defined as a threatening gesture that creates a reasonable apprehension of an imminent battery. *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004). As addressed above, the officers had probable cause to arrest Askew and did not use excessive force when handcuffing him. Because the force defendants used to arrest Askew was reasonable, his state law assault and battery claims fail. *See Parker v. Village of Riverside*, 2003 U.S. Dist. LEXIS 3771, at *24 (N.D. Ill. March 12, 2003). Summary judgment must be granted on Count IV.

### E. Count V: Malicious Prosecution

Count V alleges Quinn and Puchalski maliciously entangled Askew in a legal battle without probable cause to believe he committed a crime. To prevail on a malicious prosecution claim,

Askew must prove lack of probable cause for the legal proceeding. *See Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242 (1996). However, the summary judgment record clearly establishes probable cause to believe Askew committed the crime of aggravated assault. Therefore, summary judgment is warranted on Count V.

### III. City of Chicago Motion for Summary Judgment

#### A. Counts I and II: § 1983 *Monell* Claims

In Count I, Askew claims the police officers falsely arrested and unlawfully detained him without justification and without probable cause. In Count II, he claims the officers subjected him to excessive force in violation of the Fourth Amendment by handcuffing him too tightly. He alleges the officers' misconduct occurred pursuant to Chicago police department custom and practice. Because the arresting officers clearly had probable cause to arrest Askew and did not use excessive force, Askew cannot prevail on his § 1983 claims against the City. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (municipality cannot be held liable for § 1983 claim if individual defendants did not inflict a constitutional harm).

Moreover, there is no evidence that a City custom or practice caused Askew's alleged constitutional injuries. Askew contends the Chicago police department has a practice of filling out criminal complaints after they have been signed under oath by complainants. Response at 24. Quinn testified he acted in accordance with police department policy when he filled in the narrative portions of Lis and Padget's criminal complaints after they signed them. Considering this evidence in the light most favorable to Askew, there is no genuine issue of material fact that the alleged custom caused his arrest. Quinn's misrepresentation in the narrative sections of the complaints was immaterial to the probable cause determination. Accordingly, Askew cannot establish that the

alleged custom caused his arrest. *See Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991) (court reversed verdict against sheriff on § 1983 claim because plaintiff failed to proffer evidence that official custom or policy caused his alleged constitutional injury). Nor has he proffered evidence of any other alleged policy, custom or practice that caused his alleged constitutional injuries. Accordingly, the court must grant summary judgment for the City on Counts I and II.

### B. Counts VI and VII: *Respondent Superior* and Indemnification

Counts VI and VII seek to hold the City liable for the state law claims asserted against Quinn and Puchalski based on *respondeat superior* and indemnification principles. A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109; *Hall v. City of Chicago*, 2003 U.S. Dist. LEXIS 16269, at *15 (N.D. Ill. Sept. 15, 2003). Because Quinn and Puchalski are not liable for the state law claims asserted in Counts III through V, the City cannot be liable for their actions. Summary judgment is warranted on Counts VI and VII.

### CONCLUSION

There are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Accordingly, the summary judgment motions are granted.

April 6, 2005    ENTER:

_____
Suzanne B. Conlon
United States District Judge